## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

Cottonwood Development                    Civil Action No. 6:13-00954

versus                                    Judge Rebecca F. Doherty

Moter, et al                              Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Pending before the undersigned, on referral from the district judge, is a Motion for Default Judgment As To Charles Walter Moter; State of Louisiana, Department of Revenue; Lafayette Parish School, Board; and NCO Portfolio Management, Inc., filed by the United States. [Rec. Doc. 39]. No opposition has been filed, and the deadline for filing opposition has expired.[1] For the reasons that follow, the undersigned will recommend that the Motion be granted.

### *Background*

This action was filed in the Fifteenth Judicial District Court, Parish of Lafayette, Louisiana. On April 8, 2013, Plaintiff, Cottonwood Development, filed a Petition To Quiet Title to a parcel of real property located in Lafayette Parish that it purchased at a tax sale conducted on account of delinquent property taxes owed by Charles Walter Moter ("the Property"). The Property bears the address of 219 Brumley Road, Duson, Louisiana 70529 and is described as follows:

---

[1] LR 7.5W provides that opposition shall be filed within twenty-one (21) days after service of the motion. As the Motion was filed n February 18, 2016, any opposition was due by March 11, 2016.

> That certain parcel of land, with improvements, being situated in Section 11, Township 10 South, Range 3 East, Parish of Lafayette, Louisiana. According to a Plat of Survey, prepared by Colomb and Laurent, Registered Surveyors, dated July 25, 1962, attached to Act No. 427997 of the records of the Clerk of Court's Office, Parish of Lafayette, Louisiana, this parcel is identified as "property to be acquired Carrol J. Hernandez", contains approximately two and two thirds arpents, more or less, and has a frontage of 248.4 feet on Brumley Lane (formerly proposed street), by depth of equal lines of 384 feet with a rear line of 252 feet and is bounded easterly, Brumley Lane, southerly property of George Conque et al, heirs or assigns, westerly property of Charles Judice, heirs or assigns, northerly proposed street.

Plaintiff named as Defendants, Charles Walter Moter, the United States of America, Department of Treasury, Internal Revenue Service ("the United States"), the State of Louisiana, Department of Revenue ("LA Department of Revenue"), the Lafayette Parish School Board ("LPSB") and NCO Portfolio Management, Inc. ("NCO"). Service returns were filed into the state court record providing that the Defendants were served as follows: Moter on April 19, 2013, the United States on April 12, 2013, the LA Department of Revenue on May 9, 2013, the LPSB on April 12, 2013, and NCO on April 15, 2013. *R. 9; 17;18.*

On May 8, 2013, the United States removed the action to this Court. *R. 1.* On June 10, 2013, the United States filed an Answer to the Petition. In its Answer, the United States filed a counterclaim against Cottonwood Development and crossclaims against defendants Moter, the LA Department of Revenue, the LPSB and NCO. *R. 8.* The crossclaim defendants were served in accordance with Rule 5(a)(1)(B) and 5(b)(2)(B) of

the Federal Rules of Civil Procedure. *R. 8; 25 at 7-8.* The United States also named as "additional defendants on counterclaim and crossclaim" IberiaBank, BEST Cleaning Service, Inc., d/b/a BEST Carpet Care ("BEST") and the Lafayette City-Parish Consolidated Government ("Lafayette").[2] These parties were named as crossclaim defendants (collectively "Defendants") because "each of them may claim an interest in and/or lien on property upon which the United States seeks to foreclose its federal tax liens." *R. 8, pp. 5-6.* No responsive pleadings were filed by any of the Defendants.

On June 19, 2014, Cottonwood Development filed a motion for summary judgment seeking a "judgment foreclosing its federal tax lien against the parcel of real property at issue, ordering that the property be sold according to law, free and clear of the liens and claims of the parties herein, and ordering that the net proceeds of the sale be paid to the United States on account of its tax lien, but only after [plaintiff] Cottonwood Development is reimbursed for the property taxes it has paid in relation to the property." *R. 19, Motion For Summary Judgment.* The Court denied the motion, holding that it could not grant all of the relief requested in the motion because the record indicated that the named defendants in crossclaim, Moter, LA Department of Revenue, LPSB and NCO, were in default but default judgments had not been sought and entered against them, and that the "additional defendants"—IberiaBank, BEST and Lafayette—had been served on

---

[2] The "additional defendants" recorded either a judgment or lien against the Property. *R. 8, ¶¶ 18, 19, 21.* Summons were served on the "additional defendants" on September 30, 2013. *R. 13.*

the crossclaim but were not addressed in the motion.  *R. 25; 26, Memorandum Ruling and Order.*

Thereafter, on January 21, 2015, Cottonwood Development and the United States filed a joint Stipulation of Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), (c) dismissing IberiaBank, BEST and Lafayette. *R. 31.* Also, on January 21, 2016, the United States filed an Application For Entry Of Default, *R. 32*, and a Motion For Summary Judgment, moving for judgment that its federal tax lien survived the tax sale of the parcel of real property but that Cottonwood development holds a claim in priority to the federal tax lien to the extent of the property taxes it has paid in relation to the property. *R. 33.* On January 22, 2016, the Clerk of Court issued a Notice of Entry of Default against Defendants and thereafter, the United States filed this Motion For Default Judgment against them. *R. 35; 39.*

As Defendants have failed to appear in this action, and the Clerk of Court has entered default against them, *R. 35*, the United States therefore seeks default judgment against Defendants, in particular (1) against Moter—that the United States' tax lien for Moter's 2002 federal income tax liability encumbers the property in question, and (2) against the LA Department of Revenue, LPSB and NCO—that the United States' tax lien is entitled to priority over their interests in the property.

4

### *Law and Analysis*

The service of a summons triggers a duty to respond to a complaint and a failure to respond may result in the entry of default or default judgment under Rule 55 of the Federal Rules of Civil Procedure. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937-39 (5th Cir. 1999). When a party establishes by affidavit or some other method that there has been a default, the Clerk of Court will enter the default. *New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). Once there has been an entry of default, the plaintiff may apply to the Court for a default judgment. *Id.*

Through the entry of default judgment, the "conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S–H Inc.*, 967 F.2d 194, 205 (5th Cir.1992). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975).

Default judgments are usually disfavored under the Federal Rules of Civil Procedure. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A default judgment is considered to be a drastic remedy that should only be available "when the adversary process has been halted because of an essentially unresponsive party." *Id*. Because of this view, a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

In determining whether a default judgment should be entered, the Fifth Circuit has developed a two part test. *Taylor v. City of Baton Rouge*, 39 F. Supp. 3d 807, 813 (M.D. La. 2014) (citing *Busi and Stephenson Ltd. v. U.S. Trade Finance Corp.*, No. 3:13–CV–3935–B, 2014 WL 1661213, at *1 (N.D.Tx. April 25, 2014); *Fidelity & Guaranty Life Insurance Company v. Unknown*, No. 13–CV–412–PRM, 2014 WL 2091257, at *2 (W.D.Tx. May 16, 2014)). The first part of the analysis is to determine whether the entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Several factors are relevant to this inquiry, including: (1) whether there are material issues of fact at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by Defendant. *Id*. Second, the Court must assess the merits of Plaintiff's claims and find a viable claim for relief. *Nishimatsu Constr. Co.*, 515 F. 2d 1206.

The Court finds that default judgment is appropriate under the circumstances of this case and that the United States states a viable claim for relief. First, Defendants' failure to respond or answer the complaint has resulted in the absence of material issues of fact. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact.").

Second, the failure to respond has caused prejudice to the United States because a "failure to respond ... threatens to bring the adversary process to a halt." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C–10–390, 2011 WL 4738197, at *3 (S.D.Tex, Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default are "clearly established," as all Defendants failed to file a proper and timely answer in this three year old case and have not responded to the entry of default or the Motion. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F.Supp.2d 109, 113 (D.D.C. 2011) (finding that "[d]efault judgment is appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by [the parties'] failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment."). Fourth, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *See Lindsey*, 161 F. 3d at 893. Fifth, Defendants failure to defend this law suit for almost three years as well as the fact that the United States only seeks the relief to which it is entitled under its federal tax lien, mitigates the harshness of a default judgment against Defendants. Lastly, the Court is not aware of any facts that would constitute "good cause" to set aside default judgment if Defendants filed a motion requesting such. *Id.* Where, as in this case, a defendant has been properly served and has failed to respond to the complaint or otherwise appear in the action, the relevant factors justify entry of a default judgment. *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F.Supp.3d 809, 814–15 (N.D. Tex. 2015).

Further, after reviewing the allegations set forth in the United States' Answer and Crossclaim, the Court finds that the United States has established that its tax lien continues to attach to the property at issue and is entitled to priority over Defendants' interests.

*A. The United States' Tax Lien Continues To Attach To The Property*

It is undisputed in the record of this matter that Moter acquired various portions of the property at issue from his parents, and that he had obtained an undivided interest in the entire property no later than November 2002 ("the Property"). *R. 33-1, Statement of Material Facts, ¶¶ 5-9 and record exhibits cited therein.* On June 2, 2003, an assessment of federal income tax, penalties and interest was made against Moter by the United States for the year 2002 .*R. 33-3, Declaration of Katherine F. Young, ¶ 2.* Pursuant to the Internal Revenue Code ("IRC") sections 6321 and 6322, a lien for that year arose on June 2, 2003 and attached to Moter's undivided interest in the Property. On March 30, 2004, in accordance with IRC section 6323(f), a Notice of Federal Tax Lien was filed against Moter in the real property records in Lafayette Parish, Louisiana, with respect to his federal income tax liability for 2002. *R. 19-5, Notices of Federal Tax Lien, at 1.* That Notice was re-filed on February 22, 2013. *R. 19-5 at 2-3.*

On July 19, 2012, Moter filed for bankruptcy and later received a discharge under the Bankruptcy Code, 11 U.S.C. § 727, relieving him of *in personam* liability for his 2002 federal income tax liability. *See In re Charles Walter Moter*, No. 12-50908 (Bankr. W.D.

La. 2012) *R. 19-4, Discharge Order*. As notice of the tax lien was filed in 2002 before Moter filed for bankruptcy in 2012, it survived the bankruptcy and continues to attach to the Property. *See Internal Revenue Service v. Orr (In re Orr)*, 180 F.3d 656, 660-61 (5th Cir. 1999) (citing *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy."). The discharge in bankruptcy, therefore, does not bar the United States from enforcing its tax lien for liability against the subject property *in rem*.

As previously noted, the Sheriff for Lafayette Parish offered the Property at a non-judicial foreclosure sale in May, 2009. When a "nonjudicial sale" of property, such as the local tax sale here, on which the United States has a lien occurs, and the United States has filed notice of its lien more than 30 days before the sale, the sale is "made subject to and without disturbing such lien...." 26 U.S.C. § 7425(b)(1). If the United States is not given notice of the sale in the precise manner required by statute and applicable regulations, then the sale is made subject to and without disturbing the United States' tax lien. *See* 26 U.S.C. § 7425(b)(1), (c).[3]  As described in the United States' prior motion for summary

---

[3] The pertinent provisions of the Federal Tax Lien Act provide as follows:

(b) Other sales—... a sale of property on which the United States has or claims a lien ..., under the provisions of this title, made pursuant to an instrument creating a lien on such property—

(1) shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1)....
....

(c) Special rules.—

9

judgment, *Doc. 19-2 at 3-5*, the IRS was not given notice of the tax sale as required by IRC section 7425(b), and, as a result, that sale was made subject to and without disturbing the United States' tax lien. *See* 26 U.S.C. § 7425(b)(1); *Myers v. United States*, 647 F.2d 591, 596 (5th Cir. 1981).  The Court's ruling on the prior motion for summary judgment determined that the United States' tax lien survived the tax sale and continues to encumber the property. *R. 25 at 3-6.*

Moter is in default, and the undisputed record shows that the United States' tax lien for his 2002 federal income tax liability continues to encumber the property in question.  The United States is entitled to default judgment against Moter.

*B. Determination Of Priority Between The United States And The Crossclaim Defendants In Default.*

Federal law determines the relative priority of a federal tax lien, in relation to competing interests.  *United States v. National Bank of Commerce*, 472 U.S. 713 (1985); *Texas Oil & Gas Corp. v. United States*, 466 F.2d 1040, 1049-50, 1051 (5th Cir. 1972). Priority for purposes of the federal tax lien is governed by the common-law principle that "the first in time is the first in right." *Kimbell Foods, Inc. v. Republic Nat. Bank of Dallas*, 557 F.2d 491, 501 (5th Cir. 1977) (citing *U.S. v. Roessling*, 280 F.2d 933, 935–36 (5th Cir.1960)). Although a lien for unpaid taxes arises automatically upon assessment pursuant to IRC section 6321, a notice of the federal tax lien must be filed before the lien

---

(1) Notice of sale.—Notice of a sale to which subsection (b) applies shall be given (in accordance with regulations prescribed by the Secretary) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary.

26 U.S.C. § 7425(b)-(c).

will be valid against certain classes of creditors (i.e., purchasers, holders of a security interest, mechanic's lienors, or judgment lien creditors). 26 U.S.C. § 6323(a).

The defendant LPSB recorded a judgment against Moter in the records of the Clerk of Court for Lafayette Parish on June 21, 2005. *R. 19-13, Judgment.* NCO recorded a judgment against Moter in the records of the Clerk of Court for Lafayette Parish on July 24, 2007. *R. 19-14, Judgment.* The LA Department of Revenue recorded a Notice of State Tax Assessment and Lien against Moter regarding his sales and withholding tax liabilities for certain periods in 2003 in the records of the Clerk of Court for Lafayette Parish on June 13, 2005, and another Notice of State Tax Assessment and Lien against Moter regarding his state income tax liability for 2002 in the records of the Clerk of Court for Lafayette Parish on October 23, 2006. *R.19-12, Notices of State Tax Assessment and Lien.*

The United States' Notice of Federal Tax Lien, filed on March 30, 2004, *R. 19-5,* was filed before the judgment liens of the LPSB and NCO, and before the assessment notices of the Louisiana Department of Revenue. Therefore, the United States' tax lien is entitled to priority over those defendants' interests.

## CONCLUSION

Defendants Charles Walter Moter; the State of Louisiana, Department of Revenue; Lafayette Parish School Board; and NCO Portfolio Management, Inc., have failed to appear in this action, and the undisputed record shows that (1) the United States' tax lien for Moter's 2002 federal income tax liability encumbers the property in question and (2) the United States' tax lien is entitled to priority over the interests of the State of

Louisiana, Department of Revenue; Lafayette Parish School Board; and NCO Portfolio Management, Inc.

For the foregoing reasons, it is recommended that the United States' Motion For Default Judgment [Rec. Doc. 39] be **GRANTED**, and a **DEFAULT JUDGMENT** be **ENTERED** in favor of the United States, in that the United States tax lien for Charles Walter Moter's 2002 federal income tax liability encumbers the Property and  the United States' tax lien is entitled to priority over the interests of the State of Louisiana, Department of Revenue, Lafayette Parish School Board, and NCO Portfolio Management, Inc.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

THUS DONE AND SIGNED in Lafayette, Louisiana, this 14th day of May, 2016.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

13